All right, our second case for this morning is United States v. Austin. Mr. Hillis. Good morning. May it please the court. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Austin on this appeal. He brings at least one familiar issue to this court with respect to the supervised release condition. I'll address that briefly first. The judge erred by imposing the condition. It's something that this court has addressed before. The use of the word jurisdiction is vague. Even under plain air review, it is granted relief. In the case that we cited in our brief, Ortiz v. Dixon, and there is no waiver here as this court's recent cases on this subject have also addressed. So I think this is fairly clear. Why wouldn't the district court judge's oral clarification that jurisdiction meant federal district overcome your argument and make it not vague? We'd have to change the written order to say that the oral pronouncement controls that. Under the law, the oral pronouncement of a sentence is what does control. It does, but we made contention that that was not an adequate clarification. Furthermore, we think scienter needs to be added so that we do not have inadvertent violations that lead to imprisonment. Although this court has already said that scienter is not mandatory for this particular condition. It has sometimes, and it hasn't recently. So we point to the United States v. Evelyn Johnson case that included the scienter requirement, and the case there said that this is exactly the type of condition that we have been urging district courts to impose. But the court didn't say it was error not to include that. You're right. The court said it's better with the scienter. It said more than that. It said this is exactly the condition that we have urged district courts to impose. But urged, you would agree that we've never actually flat out reversed something for not putting scienter in. You have not. We've taken issue with that. We think that the court is now creeping towards our position. Maybe not, especially on purpose in that. I'm not certain if the court didn't intend to say exactly, but that's what's the written word, and we're relying on it here. Because that strikes me, I had the same question Judge St. Eve did about the oral versus the written judgment. We say over and over again that the oral pronouncement controls, the judge clarifies what the district, what he's talking about when he talks about a district in the oral statements. Then it gets written down the other way, but the oral clarification seems to me must govern. So there has to be some mechanism then for this court to order the clarification. I suppose that would be what's next. But we still think that it's improper not to include the scienter requirement. If we're going to urge the change to be made, we should also include the use of the word knowingly that Johnson said we've urged courts to do. So you think a clarification would suffice of the federal district as opposed to jurisdiction? I think part of the problem is there's a form for the JNCs, and the supervisor release condition is a check of box. They're currently on the form, which probably should be modified. The form itself in the box that you check says jurisdiction. The commission says federal judicial district, which the clarification is not even consistent with what the sentencing commission says should be done. That's a problem relative to 3583D3 because it's not consistent with the pertinent policy of the commission as expressed under sentencing guideline 5D1.3C. So again, there are things that have to be done on this in our view. And changing their form I think would be very wise, but they seem to be locked into it. And as much as we come up and complain about it, we continue to make the same complaints because the change isn't being done. Actually, it's almost worse than that because just looking at the package of cases we have today, some district courts are using a form that talks about don't knowingly leave the federal judicial district, and others are using a form that talks about the jurisdiction, and the forms themselves seem to be all over the map. I believe that you might be referring to the Shabazz case, and that was an interlineation done, or an oral pronouncement that was later changed in the written judgment by Judge Feinerman, but the form itself said jurisdiction. I thought originally in all cases from the Northern District heads up by Judge Feinerman to make the correction, but I think that the problem persists as a court-wide issue with the standard form. I think Judge Wood's point may be that there are some other districts within the Seventh Circuit that use a different form. That's true. I'm sorry, Judge. But you're right about the Northern District's form. Okay, yes, and so courts are fond of looking to the guidelines for guidance, and yet they don't do so on this very fundamental thing that's easily fixed. With that said, if there are no additional questions on the supervised release issue, I'd like to spend the balance of my time talking about the first issue in our brief, and that is the judge's improper reliance on Chicago gun violence as a basis to impose sentence. There can be no doubt that the judge was heavily focused on this, and I think it is clear enough if you read the one sentence in appendix page 34 where the judge credits the government. He says, The government is right that illegal possession and use of guns has caused devastation throughout our communities, particularly here in Chicago. And then there's another part that he says hardly a day goes by where you don't read something about it. The problem here, though, is that this is not a gun violence case. It isn't. On the other hand, it's certainly not Figueroa either. It's true. Those statements were just so far beyond the pale that it was impossible for the court to have any idea of what was motivating the sentence. Whereas here, Judge Feinerman does give a lot of reasons, and the arguments are what they are. I'm sorry, you can answer that question. Sorry. Okay. The first thing out of the judge's mind must, in my view, have been his primary thought, and he is concerned about this. And if it's not Figueroa and if it's not Robinson, it doesn't make it right that it is something that is less than that. Those things were clearly wrong. How is this clearly right? If my client's being blamed for gun violence and he hasn't participated in any gun violence, I think that's as improper as if we were to ask him to be credited for something like an economic boom in his neighborhood for something that he had no part of. It would be ridiculous for us to ask that, and I don't think that he can be fairly punished on the flip side. The court commented on the gun violence, but the court, unlike the Robinson case, certainly didn't blame your client for the gun violence in Chicago. What was it? I'm not sure. It seemed like it was blame. If the government points out that this is a problem and this is foremost in your mind, an imposing sentence, it seems even if you didn't use the word blame that it is blaming. Why wouldn't the comment about the problems with illegal possession of guns in Chicago be directly relevant in a case involving illegal possession of a handgun, especially when you look at one of the 3553A factors being general deterrence? Academically, we should have a lot of problems as a court, I think, relying on the notion of general deterrence as a valid theory. It's the risk of being caught that is valid. But furthermore, there's something else here. But as you just said, the sentencing commission has said, and 3553A is very direct, that courts have to, and this court has said, courts have to consider, among other factors, general deterrence. Right. So why wouldn't a comment about, I don't think you would dispute the illegal possession of firearms in Chicago is part of a larger problem here. Why wouldn't a comment about that in an illegal possession of guns case be directly relevant to general deterrence? Because the problem is the tie-in to violence. He didn't say just about possession. He tied it directly to gun violence, and there was none here. The Chapel case says felon in possession is not a violent offense. Also, we need to distinguish between what the commission says. The commission didn't tell them to do this. Congress says look at the 3553A factors. That's fine. But no one says that it's appropriate ever to cast some blame on a person for something that is not part of their case. That is the problem here. If you just said that illegal gun possession is a serious problem that leads to these ill effects, we'd have a different story. And you're an illegal gun possessor, and maybe you haven't done anything yet. But one of the reasons Congress has 922G is they don't want people who seem to be high risk having guns. Yes. High risk in the response by police and so forth when people have guns. All sorts of things. But the fact is, though, my client did not use this gun to commit any gun violence. And that was first and foremost in the pronouncement of sentence when the judge was saying his reasons for giving the 70 months. We think that's incorrect. I reserve the balance of my time. Thank you. Thank you. Ms. Coleman? May it please the court. Kalia Coleman on behalf of the United States of America. The district court properly considered the Chicago gun violence problem as part of its 3553A analysis. So what did Mr. Austin do to contribute to Chicago's gun violence? Well, as the court pointed out, here the defendant was in who is a convicted felon. And after being on parole for a violent felony offense, aggravated battery, was, again, in unlawful possession of a firearm. The court was aware that the defendant was not convicted of or even accused of using that firearm. But given the circumstances and the context of the gun violence problem that we have in this city, it was certainly permissible for the court, as this court has pointed out, to consider and to take into account that this convicted felon was in unlawful possession of a firearm as a matter of general deterrence and also as a matter of specific deterrence to deter him from engaging in this conduct in the future. Additionally, counsel argued to this court that the Chicago gun violence problem was foremost in the court's mind. And the government respectfully disagreed with that statement. A review of the record explicitly shows that what was at the foremost front of the court's mind was this defendant's lengthy criminal history and also the fact that the defendant was on parole at the time of the commission of this offense after having served 10 years in state prison for an aggravated robbery, which no one will dispute is a crime of violence. And in support of that, the court at the outset stated, before it even began discussing anything about the Chicago gun violence problem, that, quote, what concerns me about this case is not only the repeated criminal history in your background, but also the fact that when you did get out, you were on parole. And even though you were on parole, it's clear, and you knew you shouldn't have a gun, and yet there you were, violating the terms of parole. Those were the initial remarks made by the district court judge. And after making those remarks, the court, in fact, took a brief recess and then took the bench again. And it was at that point that the court commented on the Chicago gun violence problem. A review of this record shows that the court made other statements, laid out a litany of the defendant's criminal history, how many times he had been convicted, noted that he had been convicted on 12 separate occasions, that he had criminal history points of 20, that placed him in a criminal history category of six. And the court continued to state how it was troubled by the fact that the defendant continued to commit crimes and also had a history of parole violations. So given this record, it is clear that, unlike in Figueroa, the court here was primarily focused on the defendant's lengthy criminal history, his parole violation, and how a consequential sentence needed to be imposed to deter that conduct in the future. Let me ask you about the condition of supervised release. Is there any reason why this court shouldn't order the judgment to be corrected, to conform to the judge's oral sentence and substitute the words judicial district? Obviously, the people downstream, the BOP people, the other people, aren't digging back to transcripts. They're looking at the judgment. So wouldn't it be a helpful clarification? It may be a helpful clarification, Your Honor, but as this court mentioned, the oral pronouncement is what controls. And it's clear, based on a review of the record, that this court, that Judge Lee took the time to explain what the term jurisdiction meant. He said that it meant the federal district, where the district court sits. And it's clear, based on that language that he was explaining, jurisdiction was referring to a geographic area, not the jurisdictional authority of the court. And I'm just saying, it's never desirable to have the oral sentence and the written sentence diverge. And we know which one controls, but why isn't it appropriate, when the defendant raises the point, to make the written sentence conform to the oral pronouncement? That would be a routine thing, wouldn't you think? Perhaps, Your Honor. Why does that hurt the government at all? Your position is anyway that we all know that it's a particular area and refers to geographical boundaries and nobody wants to photocopy a little map, apparently, but one could. What's the harm? Judge, there would be no harm to correcting the order. However, what the defense was requesting is a full remand and a full resentencing, and the government believes that that is not necessary in this case. If the court is inclined to address the issue with the judgment and the actual order in the form, what would be appropriate would be to simply, this court could make that correction, or to remand with instructions, which has been done in other cases, the Hudson case, the Johnson case, and order the court to substitute jurisdiction for federal judicial district. That would be the appropriate remedy if the court believes that the oral pronouncement is not sufficient. So let me ask you about the other side of Mr. Hills' argument, the cyanter point. Even though we haven't yet said that that's a necessary part of this term, should we take that next step? You really don't. Most people, most normal people at least, don't as they cross the border from Cook County into, or maybe Lake County into, maybe that's an international boundary, or interstate boundary. But they're not conscious of leaving the northern district of Illinois and entering the central district of Illinois. It's something that maybe you don't even think about if you're driving south to Springfield. So why not put a cyanter requirement in there? Why isn't that actually appropriate? Well, Your Honor, the government will not argue that by including the cyanter requirement, it could possibly alleviate this line or remove this line of argument. However, one thing the government would like to point out is that in cases where this court has ruled that the cyanter requirement is more appropriate, is in situations where a defendant lives on the boundary of two different districts, and the court is aware of that information. Here, there was no reason for the court to even consider adding the cyanter requirement, because the defendant is a lifelong resident on the west side of Chicago, and there was no indication that he frequently traveled or lived near a boundary line. And so for those reasons, it was not imposed here, and we believe that it would not be necessary to be imposed here. So you're just guessing he's not going to make a mistake? Well, Your Honor, not guessing, but certainly it's possible. But in those circumstances, again, we believe that there was no facts before the court that would suggest that the defendant would frequently travel into other jurisdictions. Instead, it seemed that he remained in his neighborhood for the majority of his life. And so, again, the government is not arguing that it would not benefit or behoove courts to just implement this general language in the orders. But the primary question here is whether or not the appropriate remedy here is to remand this for a full resentencing, and we simply believe that there is no reason to do that. Ms. Coleman, it might be worth getting the word out to the U.S. Attorney's Office that the form that is being used has jurisdiction in that federal judicial district, and that's something they should be raising with courts. I will take on that task, Your Honor. I think it's a problem with the Probation Department just picking out what amounted to a state form, actually. I will definitely relay the message. If there are no further questions from this court, the government would ask that this court affirm defendant's conviction and sentence. Thank you. All right, thank you. Mr. Hillis, anything further? Nowhere in the guidelines do we find any consideration about if you live in a place that is near boundaries, then the condition should be different. That was an invention by this court, I'm sorry to say, and it is a departure from what the guidelines say. It shouldn't be required by our clients to come into court and say, we live in this county, we drive this far, we may go to this place. The condition speaks for itself about what the commission thinks needs to be there. It's amazing to me that the state of Illinois finds it to be manageable that people can travel wherever they want to within the state, but federally we are locking people into these administrative constructs of judicial districts, federal judicial districts. It makes no sense, I think it impinges on liberty interests, but that will be for a different day. As far as... It has to do with also supervision. It does, but we as probation officers, I think are as capable in the federal system as in the state system, and they should be able to manage people where they travel throughout the state as a minimum, and probably beyond. Any reliance on an improper factor is wrong to impose sentence. It's not a matter of how much. The rule from Figueroa and Robinson was easily made because of the vagaries of the judge's comments, but it's the rule that should be the controlling thing. And the government's right about what judges began to say in imposing sentence, but the important thing is when he actually gave his sentencing rationales after the recess, and the first words out of his mouth was about the gun violence practically, his first words. So that's the important thing. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.